**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOHN J. BOURGEOIS,**

           **Plaintiff,**           **8:08-cv-798**
                                            **(GLS/RFT)**
    **v.**

**BRANDY PELKEY** and **JERROD**
**TROMBLEY,**

           **Defendants.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:**<br>Brennan, White Law Firm<br>163 Haviland Road<br>Queensbury, NY 12804 | DANIEL J. STEWART, ESQ. |
| **FOR THE DEFENDANTS:**<br>Murphy, Burns Law Firm<br>226 Great Oaks Boulevard<br>Albany, NY 12203 | THOMAS K. MURPHY, ESQ. |

**Gary L. Sharpe**
**District Court Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff John Bourgeois commenced this action under 42 U.S.C. § 1983 against defendants Brandy Pelkey and Jerrod Trembley, asserting

claims of false arrest, malicious prosecution, and excessive force in violation of the Fourth and Fourteenth Amendments of the United States Constitution and New York State law. (*See* Compl., Dkt. No. 1.) Pending is defendants' motion for summary judgment. (Dkt. No. 19.) For the reasons that follow, the motion is granted and Bourgeois's claims are dismissed.

## II. Background

### A. Factual History

On July 23, 2005, plaintiff John Bourgeois and his wife, Amy Demars-Bourgeois, spent the evening drinking in bars located in the City of Plattsburgh, New York, becoming intoxicated in the process. (*See* Defs. SMF ¶ 1, Dkt. No. 19:2.) At approximately 1:50 a.m., while at Peabody's bar, Bourgeois approached Demars-Bourgeois after becoming jealous that she was talking to a coworker and ignoring him. (*See id.* at ¶ 2.) In response, Demars-Bourgeois proceeded to leave the bar, and Bourgeois followed her out. (*See id.*)

Once outside, Demars-Bourgeois began walking away with Bourgeois following a few feet behind. (*See* Pl. Resp. SMF ¶ 3, Dkt. No. 22:5.) Bourgeois then "tried to grab [Demars-Bourgeois]'s hand, and ...

2

ended up grabbing ... the wrist area," (Stewart Aff., Pl. Ex. I, Bourgeois Trial Test. at 179, Dkt. No. 22:2), but Demars-Bourgeois pulled away, (*see* Pl. Resp. SMF ¶ 3, Dkt. No. 22:5).

Shortly thereafter, after observing this exchange, defendant Officer Brandy Pelkey approached Bourgeois, stepped in front of him, and told him to leave Demars-Bourgeois alone or he would be arrested. (*See* Defs. SMF ¶ 4, Dkt. No. 19:2.) Bourgeois responded to Officer Pelkey, telling her that Demars-Bourgeois was his wife and that they were having a conversation. (*See* Pl. Resp. SMF ¶ 5, Dkt. No. 22:5.) Bourgeois next walked around Officer Pelkey, continuing towards his wife. (*See id.*; Defs. SMF ¶ 6, Dkt. No. 19:2.)

As Bourgeois began crossing the Bridge Street bridge, Demars-Bourgeois, who had already crossed the bridge, turned around and began walking back across the bridge towards Bourgeois. (*See* Defs. SMF ¶¶ 6-7, Dkt. No. 19:2.) At about the midpoint of the bridge, Bourgeois and Demars-Bourgeois came back into contact, whereby Bourgeois again tried to grab Demars-Bourgeois's hand, grabbing her arm instead. (*See* Pl. Resp. SMF ¶ 7, Dkt. No. 22:5.) Demars-Bourgeois again pulled away, and, for a third time, Bourgeois grabbed her, but Demars-Bourgeois fell into the

3

wall of the bridge and onto the ground.  (*See id.*; *see also* Stewart Aff., Pl. Ex. I, Bourgeois Trial Test. at 183-85, Dkt. No. 22:2.)  Demars-Bourgeois sustained two scrapes to her back as a result.  (*See* Pl. Resp. SMF ¶ 10, Dkt. No. 22:5.)

Upon observing this second interaction, which culminated in Demars-Bourgeois's fall, Officer Pelkey and defendant Officer Jerrod Trombley placed Bourgeois under arrest, charged him with attempted assault in the third degree under New York Penal Law §§ 110 and 120.  (*See* Defs. SMF ¶ 9, Dkt. No. 19:2.)  Bourgeois was then placed in a police car, transported to the Plattsburgh Police Department, and, at some point in the morning of July 23, was arraigned and released.  (*See* Murphy Aff., Defs. Ex. H, Bourgeois Dep. at 73-83, Dkt. No. 19:11.)

On October 11, 2005, a hearing was held before the Plattsburgh City Court, wherein the court made a finding that probable cause existed for Bourgeois's arrest.  (*See* Defs. SMF ¶ 11, Dkt. No. 19:2.)  In her incident report, arrest report, information and complaint, and at the October 11, 2005 hearing, Officer Pelkey recounted her observations of the July 23 incident, while also averring that, after Demars-Bourgeois fell on the bridge, she saw Bourgeois pick Demars-Bourgeois up and put her up against the

4

bridge wall with his right hand around her neck.  (*See* Murphy Aff., Defs. Ex. C, Dkt. No. 19:6; Murphy Aff., Defs. Ex. D, Pelkey Hr'g Test. at 9, Dkt. No. 19:7.)  Officer Trombley testified to the same: "I saw [Bourgeois] pick [Demars-Bourgeois] up ... [h]is hands was [sic] on -- on [Demars-Bourgeois]'s throat, placed [her] against the bridge and actually pushed her up, like -- her back was arched on the bridge."  (Murphy Aff., Defs. Ex. D, Trombley Hr'g Test. at 38, Dkt. No. 19:7.)   However, both Bourgeois and Demars-Bourgeois denied that he grabbed her by the neck.  (*See id.*, Demars-Bourgeois Hr'g Test. at 56; *id.*, Bourgeois Hr'g Test. at 67-68, 74; Stewart Aff., Pl. Ex. I, Bourgeois Trial Test. at 186, Dkt. No. 22:2.)

   Prior to Bourgeois's trial, the information charging attempted assault was replaced by a prosecutor's information charging two counts of disorderly conduct, New York Penal Law § 240.20.  (*See* Defs. SMF ¶ 12, Dkt. No. 19:2.)  Bourgeois's trial was held on June 20, 2006, with Plattsburgh City Court Judge Penelope D. Clute presiding.  (*See* Stewart Aff., Pl. Ex. I, Trial Tr., Dkt. Nos. 22:1-2.)  At trial, Bourgeois, Demars-Bourgeois, and Officers Pelkey and Trombley testified.  (*See generally id.*)  In a written decision and order dated July 28, 2006, Judge Clute found Bourgeois guilty beyond a reasonable doubt on the first count of disorderly

conduct and not guilty on the second count.  (*See* Murphy Aff., Defs. Ex. E, Clute Order at 8-9, Dkt. No. 19:8.)

Bourgeois appealed his conviction to the Clinton County Court, and in a decision and order dated September 17, 2007, County Court Judge Patrick R. McGill reversed the conviction and dismissed the information, finding: (1) that the prosecutor's information was facially insufficient because it did not contain a factual allegation as to the mental state required for disorderly conduct; (2) that the evidence presented at trial was legally insufficient for the trial court to find that Bourgeois "intended to 'cause public inconvenience, annoyance or alarm, or recklessly created a risk thereof' by engaging in 'fighting or in violent tumultuous or threatening behavior'"; and (3) that the verdict was against the weight of the evidence. (*See* Murphy Aff., Defs. Ex. F, McGill Order, Dkt. No. 19:9 (quoting N.Y. PENAL LAW § 240.20(1)).)

## B.     **Procedural History**

On July 23, 2008, Bourgeois filed the instant action against defendants Pelkey and Trombley, alleging claims under federal and state law for false arrest, malicious prosecution, and excessive force.  (*See* Compl. ¶¶ 22-39, Dkt. No. 1.)  On February 12, 2010, defendants moved

6

for summary judgment, seeking dismissal of Bourgeois's claims and asserting qualified immunity. (*See* Dkt. No. 19.)

## III. Standard of Review

The standard for the grant of summary judgment is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its previous opinion in *Bain v. Town of Argyle*, 499 F. Supp. 2d 192, 194-95 (N.D.N.Y. 2007).

## IV. Discussion

### A. False Arrest and Malicious Prosecution

In general, the torts of false arrest and false imprisonment under 42 U.S.C. § 1983 and New York State law are "substantially the same ... save for the requirement that the constitutional tort be under color of state law." *See Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991) (internal quotation marks and citation omitted); *see also Jacques v. Sears, Roebuck & Co.*, 30 N.Y.2d 466, 473 (N.Y. 1972). A claim for false arrest or imprisonment brought pursuant to § 1983 "rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citation omitted). To establish a false arrest claim under either federal or

7

New York law, a plaintiff must demonstrate that: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (internal quotation marks and citations omitted).

"An arrest is justified, or otherwise privileged, if there was probable cause to arrest." *Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 287 (S.D.N.Y. 2001) (citations omitted). In other words, "the existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." *Weyant*, 101 F.3d at 852 (internal quotation marks and citation omitted). "Thus, a claim for false arrest must fail if probable cause to arrest existed." *Martinetti v. Town of New Hartford Police*, 112 F. Supp. 2d 251, 252 (N.D.N.Y. 2000) (citation omitted).

"Probable cause exists when an officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) (internal quotation marks and citation omitted). "Whether probable cause

8

exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citation omitted). Importantly though, an "officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Id.* at 153 (citing, inter alia, *Whren v. United States*, 517 U.S. 806, 812-13 (1996)). Instead, an arrest is lawful "as long as the circumstances, viewed objectively, justify that action." *Id.* (internal quotation marks and citation omitted). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers, or may require a trial if the facts are in dispute." *Weyant*, 101 F.3d at 852 (citations omitted).

Like false arrest and imprisonment, the elements of malicious prosecution under § 1983 and New York law are the same. *See Cook v. Sheldon*, 41 F.3d 73, 79 (2d Cir. 1994). New York law "places a heavy burden on malicious prosecution plaintiffs." *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195 (2000). To prevail on a malicious prosecution claim, a plaintiff must establish that: "(1) the defendant commenced a criminal proceeding against him; (2) the proceeding ended in the plaintiff's favor; (3)

9

the defendant did not have probable cause to believe the plaintiff was guilty of the crime charged; and (4) the defendant acted with actual malice." *Cook*, 41 F.3d at 79 (citation omitted); *see also Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004). "Additionally, there must be a post-arraignment seizure for a § 1983 malicious prosecution claim." *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (citation omitted).

And as with false arrest, the existence of probable cause is a complete defense to a malicious prosecution claim. *See Savino*, 331 F.3d at 72; *see also Lewis v. U.S.*, 388 F. Supp. 2d 190, 195 (S.D.N.Y. 2005). Probable cause to commence a criminal proceeding exists when a defendant has "knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994). In addition, the existence of probable cause "may *only* be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Savino*, 331 F.3d at 72 (internal quotation marks and citation omitted).

Here, probable cause existed to both arrest and prosecute

10

Bourgeois.  As to his arrest, the undisputed facts establish that at approximately 2:00 a.m. on July 23, 2005, Officers Pelkey and Trombley observed (1) an intoxicated Bourgeois follow Demars-Bourgeois down the street; (2) Bourgeois confront Demars-Bourgeois and grab her arm, in response to which Demars-Bourgeois pulled away and continued to walk away from him; (3) Bourgeois disregard Officer Pelkey's admonishment and warning, and continue to follow Demars-Bourgeois; (4) Bourgeois catch up to Demars-Bourgeois on the bridge and again grab her arm; and (5) Bourgeois grab for Demars-Bourgeois a third time and Demars-Bourgeois fall into the wall and onto the ground.  Based on these facts alone—and disregarding the allegations that Bourgeois grabbed Demars-Bourgeois by the neck and held her up against or over the bridge wall, which both Officer Pelkey and Officer Trombley testified consistently to, and which Demars-Bourgeois could not entirely refute due to her general inability to specifically recall the events on the bridge, (*see* Murphy Aff., Defs. Ex. D, Demars-Bourgeois Hr'g Test. at 56, Dkt. No. 19:7 ("That's one section of the night that's a little bit blurry to me.")—the court is satisfied that Officers Pelkey and Trombley had probable cause to arrest Bourgeois

11

for attempted assault,[1] disorderly conduct,[2] or second-degree harassment.[3] *See Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir 2006) ("[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant, and ... it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." (relying on *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).  Therefore, the court dismisses Bourgeois's false arrest claims.

As to the criminal prosecution, the court is equally satisfied that the undisputed facts were sufficient to justify Officers Pelkey and Trombley in the belief that they had lawful grounds for prosecuting Bourgeois for

---

[1] "A person is guilty of assault in the third degree when ... [w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person; or ... [h]e recklessly causes physical injury to another person ...." N.Y. PENAL LAW § 120.00(1)-(2).  And a "person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." *Id.* § 110.00.

[2] "A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof ... [h]e engages in fighting or in violent, tumultuous or threatening behavior; or ... [h]e makes unreasonable noise; or ... [i]n a public place, he uses abusive or obscene language, or makes an obscene gesture; or ... [h]e creates a hazardous or physically offensive condition by any act which serves no legitimate purpose." N.Y. PENAL LAW § 240.20(1)-(3), (7).

[3] "A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person ... [h]e ... strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same; or ... follows a person in or about a public place or places; or ... engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose." N.Y. PENAL LAW § 240.26(1)-(3).

12

disorderly conduct. Furthermore, there is nothing in the record to suggest that Pelkey or Trombley acted with malice. Nor has Bourgeois offered any evidence to support his bald, conclusory allegation that Officers Pelkey and Trombley testified falsely or engaged in any fraudulent or bad faith conduct. Accordingly, Bourgeois's federal and state law claims for malicious prosecution are dismissed.

**B.    Excessive Force**[4]

To establish a § 1983 claim for excessive force, a plaintiff must show that the force used against him was excessive under the circumstances. *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989). "Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (internal quotation marks and citation omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to

---

[4] Because claims of excessive force are also substantially the same under both federal and New York law, to the extent Bourgeois is asserting both federal and state law excessive force claims, they will not be analyzed separately. *See Nimely v. City of New York*, 414 F.3d 381, 390-91 (2d. Cir. 2005) (describing excessive force claims under both federal and New York law as turning on the objective reasonableness of the police officer's conduct).

13

make split-second judgments ... about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. And "[a]s in other Fourth Amendment contexts ... the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Id.* at 397 (citations omitted).

Here, Bourgeois's excessive force claim seems to be based solely on the fact that he was arrested, handcuffed, placed into a police car, and held for several hours at the Plattsburgh Police Department. Neither the evidence on record nor Bourgeois's allegations suggest that the force used by Officers Pelkey and Trombley in arresting Bourgeois was in any way excessive or unreasonable under the circumstances. Thus, Bourgeois's excessive force claim must be dismissed.

## C.     **Qualified Immunity**

Alternatively, Officers Pelkey and Trombley are entitled to qualified immunity as it was objectively reasonable for them to believe that they had probable cause to arrest Bourgeois and that their subsequent actions did not violate his rights. *See African Trade & Info. Ctr., Inc. v. Abromaitis*, 294 F.3d 355, 359 (2d Cir. 2002) ("The doctrine of qualified immunity

14

shields government officials from liability for civil damages when their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'") (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) ("If there is no dispute as to the material historical facts, the matter of whether the officer's conduct was objectively reasonable is an issue of law to be determined by the court." (citations omitted)).

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 19) is **GRANTED** and Bourgeois's claims are **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 25, 2011
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge

15